UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BONNIE SELLINGER,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | Civ. No. 18-17692 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Bonnie Sellinger, seeks review pursuant to 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Social Security disability benefits under Title II and Title XVI of the Social Security Act based on various physical and mental ailments. For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**[1]

**Procedural History**

Ms. Sellinger filed applications for disability and supplemental security income benefits on January 5, 2010, with an alleged onset date of April 15, 2003. (R. 274–80.) Her claims were initially denied (R. 95–99), and denied again on reconsideration (R. 104–09). A complex procedural history then ensued, in which Administrative Law Judge ("ALJ") decisions denying Ms. Sellinger's

---

[1]   Citations to the record are abbreviated as follows:

"DE _" = Docket entry in this case

"R. _" = Administrative Record (DE 7) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 7 attachments)

"Pl. Br." = Ms. Sellinger's Brief (DE 19)

"Gov. Br." = Commissioner's Brief (DE 22)

application were twice reversed, once by the Social Security Appeals Council on June 8, 2014 (R. 92), and once upon a consent order approved by the Honorable John Vazquez of the United States District Court for the District of New Jersey, (Civ. No. 17-000320, DE 11.) In both decisions, the ALJ had determined that Ms. Sellinger was capable of working, either by returning to her previous job or via an RFC for light work. (R. 8–31, 70–90.)

Pursuant to the consent order entered by Judge Vazquez, the Appeals Council issued a remand order on July 28, 2017 which directed that the case should be reassigned to a new ALJ, who was ordered to: (1) re-evaluate Ms. Sellinger's mental impairments and indicate which were "severe," and provide specific findings; (2) give further consideration to Ms. Sellinger's residual functional capacity and provide a rationale, including a determination of whether the claimant has past work and whether she can perform it now, using vocational expert testimony if relevant; and (3) offer the claimant the opportunity for a new hearing and issue a new decision. (R. 1445.)

On remand, the matter was reassigned to ALJ Sharon Allard, who considered both the remanded issues and Ms. Sellinger's subsequent application for SSI filed on January 12, 2017. (R. 1469–1542 (hearing before ALJ Allard).) ALJ Allard issued a partially favorable decision finding that Ms. Sellinger became disabled on March 29, 2015, but was not disabled before that date. (R. 1445–68.) Ms. Sellinger appealed administratively and then filed suit in this court. (DE 1.)

## II. DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of

impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. In doing so, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. § 416.923, 416.924a(b)(4), 416.926a(a) and (c). If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

**B. ALJ Allard's Decision**

ALJ Allard applied the five-step framework.

At step one, the ALJ found that Ms. Sellinger had not performed substantial gainful activity since the alleged onset date of April 15, 2003. (R. 1448.)

At step two, the ALJ found that Ms. Sellinger had the following severe impairments: spine disorders, dysfunction of major joints, carpal tunnel syndrome, osteoarthritis, COPD, affective disorders, anxiety disorder, peripheral neuropathy, venous insufficiency, coronary heart disease, vestibulopathy, and nicotine addiction. (*Id.*) She also found Ms. Sellinger had non-severe impairments including: hypertension, throat cancer, gall bladder problem, and alcohol use disorder in remission, which she noted had not caused more than minimal limitation in the claimant's ability to perform basic work activities. (*Id.*)

At step three, the ALJ found that Ms. Sellinger's impairments did not meet any listings. (R. 1449.) She rejected the application of Listing 1.04 (Disorders of the Spine), 4.00 (Cardiovascular System), 12.04 (Depressive, Bipolar, and Related Disorders), and 12.06 (Anxiety and Obsessive-Compulsive Disorders), concluding that the record did not contain sufficient medical evidence which met or equaled the criteria of those listings and that there had been no acceptable medical sources which showed equivalency to a listed impairment. (*Id.*) Specifically, she concluded that Listing 1.04 was not met because the record lacked documentation of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. (*Id.*) As for Listing 4.00, the record failed to document the criteria for chronic heart failure, ischemic heart disease, recurrent arrhythmias, chronic venous insufficiency, peripheral arterial disease, or any listing in the category. (*Id.*)

She concluded that Listings 12.04 and 12.06 were not met because her analysis of the so-called "paragraph B" criteria, in which Ms. Sellinger was obligated to show one extreme, or two marked, limitations in a broad area of

4

functioning, including (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves. (*Id.*) The ALJ found only moderate limitations in all four categories, noting that Ms. Sellinger's August 2010 function report, as well as her evaluations by New Jersey Division of Disability Services psychologists and a consultant psychologist Dr. Yalkowsky, all indicated that she had no or minor limitations in all four areas of functioning. (R. 1448–50.) She also considered the "paragraph C" criteria for Ms. Sellinger's listings and concluded that they were not present because medical treatment diminished the signs of Ms. Sellinger's mental ailments and because Ms. Sellinger was capable of adapting to changes in her environment. (R. 1450.)

At step four, the ALJ concluded that Ms. Sellinger had the residual functional capacity to engage in the exertional demands of sedentary work, with exceptions. (*Id.*) She concluded Ms. Sellinger could occasionally lift and carry ten pounds and could frequently lift and carry less than that amount, as well as stand and walk for up to two hours and sit for up to six hours in an eight-hour work day. (*Id.*) As for non-exertional demands of work, the ALJ concluded Ms. Sellinger was capable of occasionally climbing ramps and stairs, balancing on wet or uneven surfaces, kneel, stop, crouch, and frequently handle and finger, though she could not be exposed to temperature extremes of heat or cold, concentrated wetness and humidity, and even moderate exposure to odors, fumes, dusts, gases, or poor ventilation. (R. 1450–51.) The ALJ further concluded Ms. Sellinger could understand and execute simple, routine tasks where production is measured by the end of the workday, have occasional contact with coworkers and supervisors, have incidental contact with the public, make simple decisions, and adapt to occasional changes in essential work tasks. (R. 1451.) The ALJ concluded Ms. Sellinger would be off task 10% of the workday as a result of her impairments. (*Id.*)

In coming to that conclusion, the ALJ relied on an August 2010 function report, which concluded that Ms. Sellinger's conditions adversely affected her

ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, use her hands, and complete tasks. (R. 1451.) The conditions did not, however limit her ability to speak, hear, see, remember, understand, get along with others, concentrate, or follow instructions. (*Id.*) The ALJ also considered Ms. Sellinger's testimony, which was that she has a weak memory, a tenth-grade education, arthritis in the spine and both hands, foot swelling, and pain, and that she had undergone throat surgery, gall bladder surgery, and removal of a cyst. (R. 1451.) The ALJ discounted Ms. Sellinger's statements regarding intensity, persistence, and limiting effects of those health problems, however, because the symptoms were not supported by the evidence in the record. (R. 1452.)

With respect to Ms. Sellinger's physical symptoms, the ALJ considered a consultative examination by a Dr. Patel on January 24, 2011, who identified status post arthritis, sprain in the lumbosacral spine with persistent pain, carpal tunnel syndrome, hypertension, and Raynaud's phenomenon and neuritis. (*Id.*) She also considered December 2016 medical records from a Dr. Pavan which indicated nausea, constipation, and mild reflux esophagitis, as well as a January 23, 2017 assessment by a Dr. Czyzekski which determined that Ms. Sellinger had hypertension, though her blood pressure was under "good control," as well as fatigue and shortness of breath. (*Id.*) Lastly, the AJ considered an April 2017 consultative examination by Dr. Singh which found that Ms. Sellinger had lumbar disc herniation, multi-joint osteoarthritis, anxiety, hallux limitus, high blood pressure, and COPD. (R. 1452–53.)

As for Ms. Sellinger's mental impairments, according to an April 2017 psychiatric consultative examination by Dr. Steven Yalkowsky, Ph.D., Ms. Sellinger presented as pleasant and cooperative with age-appropriate social skills and logical thought processes, and no indication of serious psychopathology. (R. 1453.) He noted that Ms. Sellinger had satisfactory abilities at a range of tests including recalling a list of words, demonstrating general knowledge such as the name of the president, performing mental arithmetic, and demonstrating insight in social situations. (*Id.*) The ALJ also

6

considered Ms. Sellinger's history of alcohol and nicotine abuse in concluding that she is not presently disabled. (*Id.*)

The ALJ gave partial weight to the DDS consultants, who concluded that Ms. Sellinger had severe spinal disorders, COPD, and depressive and bipolar disorders. (*Id.*) They concluded she could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and stand for six hours in an eight-hour workday. (*Id.*) The DDS mental health consultants found mild or no limitations in the paragraph B criteria. (R. 1453–54.) The ALJ explained that their opinions merited only partial weight because the DDS consultants did not have the benefit of the latest medical evidence or of observing Ms. Sellinger personally. (*Id.*)

The ALJ also gave partial weight to Dr. DiLallo, who concluded that Ms. Sellinger's ability to engage in fine manipulation was impaired and her range of motion was limited, but that her gait and pace were good. (R. 1454.) Similarly, she gave partial weight to Dr. Eden Atienza, who assessed Ms. Sellinger's physical residual functional capacity and concluded that she was capable of lifting 20 pounds and standing for six hours in an eight-hour day, concluding that though the report was a personal examination of the claimant, it deserved lesser weight because it did not reflect the full extent of Ms. Sellinger's limitations and did not explain its conclusions. (*Id.*) The ALJ also gave partial weight to the psychological evaluations of Drs. Makhija, who concluded that Ms. Sellinger has anxiety disorder, PTSD, depression, alcohol abuse disorder, and nicotine addition, and Dr. Yalkowsky, who concluded that Ms. Sellinger had sufficient social maturity and other skills to independently manage her benefit if granted, concluding that while both examinations were based on personal examination, they lacked function-by-function analyses. (*Id.*) Lastly, the ALJ gave partial weight to Dr. Singh, who noted that Ms. Sellinger was slow to get up from a seated position but could separate papers and push buttons, again concluding that it was based upon personal examination but lacked a function-by-function analysis. (R. 1454–55.)

At step five, the ALJ came to two separate conclusions, divided by time periods. The dividing line was March 29, 2015, the date that Ms. Sellinger aged out of the category of "younger individual age 45-49" and into the category of "individual closely approaching advanced age." (R. 1455.) The ALJ concluded that before she aged out of the "younger individual" category, Ms. Sellinger could have performed jobs which were widespread in the economy, such as table worker, document preparer, and final assembler. (R. 1455–56) The ALJ reached the opposite conclusion for the period after March 29, 2015, finding that Ms. Selling was then disabled and unable to perform such work. (R. 1456.)

### III.   DISCUSSION

Ms. Sellinger challenges the adverse portion of the ALJ's decision, *i.e.,* the decision that she was not disabled before March 29, 2015. The remainder of this Opinion should be understood to refer to that period only.

Ms. Sellinger asserts that ALJ Allard (1) failed to adequately explain her findings at steps 2 and 3; (2) lacked substantial evidence in support of the RFC; and (3) ignored Ms. Sellinger's testimony about her symptoms. I reject her assertions and affirm.

#### A. The ALJ's Explanation of Her Findings at Steps 2 and 3

As for steps 2 and 3, Ms. Sellinger argues more specifically that (1) ALJ Allard failed to explain why she concluded Ms. Sellinger's hypertension was non-severe; and (2) the ALJ's Listings analysis failed to mention five of Ms. Sellinger's severe impairments and failed to consider that combinations of those impairments might be medically equivalent to a listing.

I reject these arguments because Ms. Sellinger has not shown that the ALJ's errors were harmful—that is, that ALJ Allard, had she not made the purported errors, would have ruled in Ms. Sellinger's favor. For the purposes of this review, Ms. Sellinger "bears the burden to demonstrate harm" and thus must "offer[ an] explanation of how [the ALJ's error] affected the outcome of h[er] disability claim." *Holloman v. Comm'r Soc. Sec.*, 639 Fed. Appx. 810, 814 (3d Cir. 2016); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Unless

she can show some likelihood that she would have been found disabled absent the alleged error, I must affirm the ALJ's decision.

I find no harmful error here. Ms. Sellinger complains that the ALJ failed to consider a number of listings, including Listings 1.02 (Dysfunction of Major Joints and Osteoarthritis), 2.07 (Vestibulopathy), 3.02 (Chronic Obstructive Pulmonary Disease), 4.04c (Coronary Artery Disease), 4.11 (Chronic Venous Insufficiency), and 11.14 (Carpal Tunnel Syndrome and Peripheral Neuropathy). (Pl.'s Br. at 20–21.) She adds that the ALJ failed to sufficiently discuss the listings that she did consider, such as 1.04 (Spine Disorders). (*Id.*) At no point in her brief, however, does Ms. Sellinger identify how further analysis would have revealed that she met the requirements of those listings. She gives no explanation of what facts the ALJ left out, failed to consider, or rejected which would have entitled her to relief. She never explains how considering her ailments in combination would have shown equivalency to a listing.

The closest Ms. Sellinger comes to identifying a harmful error is her discussion of venous insufficiency, coronary artery disease, and hypertension. (Pl.'s Br. at 21.) These three impairments, she argues, should have been analyzed in connection with Listings 4.04c and 4.11, because Ms. Sellinger's hypertension "undoubtedly has contributed to chronic venous insufficiency and coronary artery disease." (*Id.*) To say that a combination of ailments would "undoubtedly" have resulted in a finding of disability does not suffice; Ms. Sellinger has failed to articulate how, had the ALJ properly evaluated those impairments together, she would have met a listing. *See Holloman*, 639 Fed. Appx. at 814 (claimant must answer the question "how [she] might have prevailed . . . if the ALJ's analysis had been more thorough"); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (claimant's argument that her weight made it more difficult for her to stand, walk and manipulate her hands and fingers was insufficient to show how five step analysis should have come out differently).

9

The same is true of Ms. Sellinger's complaint that her hypertension should have been considered as a severe ailment. She never explains why that purported error, if fixed, would have resulted in her receipt of benefits. The ALJ was on solid ground in rejecting her hypertension as a severe ailment because it did not impact her life, and the ALJ noted that her doctors had concluded that her hypertension was under "good control." (R. 1452.)

**B. Sufficiency of the Evidence in Support of the ALJ's RFC**

Ms. Sellinger asserts that there was not substantial evidence in support of her RFC that she could: (1) sit for six hours in a work day, stand and walk for two hours of a work day, lift and carry up to 10 pounds, and climb ramps and stairs; (2) balance on wet, moving, and uneven surfaces; (3) frequently handle and finger objects; (4) operate in a less than pristine office environment; (5) perform unskilled work for 40 hours a week with moderate psychological limitations; and (6) be off task for only 10% of the day. (Pl.'s Br. at 29–35.)

I find there was substantial evidence in the record to justify some of the ALJ's RFC findings. As for Ms. Sellinger's ability to sit for six hours, stand and walk for two hours, lift and carry ten pounds, and climb ramps and stairs, the ALJ cited numerous pieces of supporting medical evidence, including the opinion of DDS medical expert Dr. Fusman, who found that Ms. Sellinger could frequently lift 10 pounds and occasionally lift 20 pounds, stand and walk for six hours a day, and sit for six hours a day. (R. 1453.) Dr. Fusman's findings were in agreement with those of Dr. Eden Atienza, who also performed a Physical Residual Functional Capacity Assessment and came to precisely the same conclusions. (R. 1454.) To the extent the ALJ departed from these medical findings, it was in Ms. Sellinger's favor; the ALJ determined that Ms. Sellinger was capable of standing and walking for less time than the medical experts had concluded. There was therefore substantial evidence in the record to support these findings of the ALJ.

I similarly find that substantial evidence supported the ALJ's conclusions regarding Ms. Sellinger's psychological and COPD-related limitations. There was substantial evidence in the record, including numerous psychiatric

10

examinations, which indicated that Ms. Sellinger had, at most, moderate psychiatric impairments that would not seriously impair her ability to work, and to the extent the ALJ departed from the weight of medical evidence, it was to give Ms. Sellinger greater work limitations than were indicated by the psychologists' conclusions. (R. 1449–51, 1453.) Similarly, while the ALJ's explanation of the scientific evidence surrounding Ms. Sellinger's COPD was not exhaustive, she noted that Ms. Sellinger had been diagnosed with the illness and provided for limitations based on the illness in the RFC. Ms. Sellinger, in contrast, has not identified any evidence, medical or otherwise, which would weigh in favor of greater limitations based on psychological limitations and COPD. (*See* Pl.'s Br. at 31.) Since the ALJ took these limitations into account in the RFC and Ms. Sellinger offers no basis for me to conclude that her RFC should have been more restrictive given these impairments, I will not reverse on this basis.

I also find that the ALJ had substantial evidence for her conclusion that Ms. Sellinger could frequently handle and finger objects. As the ALJ noted, there is evidence in the record that Ms. Sellinger has carpal tunnel syndrome, (R. 1452 (Dr. Patel's examination)) and that her ability to engage in fine manipulation is impaired, (R. 1454 (Dr. DiLallo's opinion).) However, the ALJ also noted that Dr. Singh opined that Ms. Sellinger was able to "separate papers and push buttons," (*Id.* (Dr. Singh's opinion)). The ALJ was entitled to rely on this evidence and give it greater weight than the opinions of Drs. DiLallo and Patel, and so I find there was substantial evidence in support of this conclusion.

The record regarding the ALJ's decision that Ms. Sellinger was able to balance on wet, moving, and uneven surfaces, is scant. The only evidence on this subject discussed in the ALJ's decision is Dr. Etienza's opinion, in which the doctor concluded that Ms. Sellinger "can never balance." (R. 1454.) This is frankly a bit enigmatic. On the other hand, Ms. Sellinger does not point to evidence that her ability of balance on such surfaces is substandard. The ALJ did state that she gave Dr. Etienza's opinion only partial weight because it did

not provide a full explanation for its conclusions and did not fully reflect the full extent of Ms. Sellinger's limitations. (R. 1454.) In addition, I find that if this was error, it was harmless. Looking ahead, the ALJ found that a person with Ms. Sellinger's RFC could perform sedentary jobs existing in the national economy, such as table worker, document preparer, and final assembler. (R. 1455–56.) Such jobs do not involve balancing on wet surfaces. The inclusion of the ability to balance on wet surfaces, even if incorrectly included in the RFC, would not affect the ALJ's ultimate conclusions.

I am thus convinced that the ALJ's RFC finding was supported by substantial evidence.

### C. Ms. Sellinger's Subjective Complaints

Ms. Sellinger argues that a claimant's subjective complaints of pain must be given serious consideration and that the ALJ ignored her claims of pain. "Subjective allegations of pain or other symptoms cannot alone establish a disability," and "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 Fed. Appx. at 134.

Ms. Sellinger fails to identify any piece of evidence indicating her subjective complaints of pain which were ignored or rejected by the ALJ. Indeed, apart from her generalized accusation that the ALJ ignored her complaints, she gives no indication of what portion of the ALJ's decision constituted error in this regard. I will not reverse the ALJ's decision on this thin basis. *John Wyeth & Bros. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (arguments "raised in passing . . . but not squarely argued, are considered waived").

### IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. A separate order will issue.

Dated: January 4, 2021

/s/ Kevin McNulty

        _____
**Hon. Kevin McNulty**
**United States District Judge**